1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| CHRISTOPHER DUNSTON, individually and on behalf of all others similarly situated,<br><br>         Plaintiff,<br><br>v.<br><br>SIGNAL HILL TELECOM SERVICES US, INC.<br><br>         Defendant. | Case No.:<br><br><br>**COMPLAINT—COLLECTIVE/CLASS ACTION** |

Plaintiff, Christopher Dunston ("Dunston" or "Plaintiff"), by and through his undersigned attorneys, individually and on behalf of all others similarly situated, files this Collective Action Complaint against Defendant, SIGNAL HILL TELECOM SERVICES US, INC. ("Defendant" or "Signal Hill"), seeking all available relief under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201, *et seq.* ("FLSA").

## **INTRODUCTION**

1.      This is a collective action brought by Plaintiff individually and on behalf of all similarly situated current and/or former Virtual Quality Auditors, Virtual Cellular Installation Inspectors, and/or other job titles completing the same or similar job duties for

COMPLAINT—COLLECTIVE/
CLASS ACTION - 1

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

1
2
3
4
5
6

Defendant (collectively, "VQAs"), to recover for Defendant's willful violations of the FLSA and other applicable rules, regulations, statutes, and ordinances.

2.      Plaintiff, and those similarly situated, were subjected to Defendant's policy and practice of failing to properly compensate its VQAs for overtime premiums as required pursuant to the FLSA.

7
8
9
10
11
12

3.      Plaintiff seeks a declaration that his rights and the rights of the putative FLSA Class were violated and, seeks to recover an award of unpaid wages and overtime premiums, liquidated damages, penalties, injunctive and declaratory relief, attorneys' fees and costs, pre- and post-judgment interest, and any other remedies to which they may be entitled.

13

## JURISDICTION AND VENUE

14
15
16

4.      This Court has subject-matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the FLSA, 29 U.S.C. §§ 201, *et seq*.

17
18
19
20
21

5.      This Court has subject-matter jurisdiction over Plaintiff's FLSA claims pursuant to 29 U.S.C. § 216(b), which provides that suits under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

22
23
24
25

6.      Upon information and belief, Defendant's annual sales exceed $500,000 and they have more than two employees, so the FLSA applies in this case on an enterprise basis. *See* 29 U.S.C. § 203(s)(1)(A).

26
27

7.      Defendant's employees, including Plaintiff and the putative Collective Class, engage in interstate commerce—including, but not limited to, utilizing telephone

28

**COMPLAINT—COLLECTIVE/
CLASS ACTION - 2**

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

lines and Internet—and therefore, they are covered by the FLSA on an individual basis.

8.      This Court has personal jurisdiction over Defendant because it is incorporated in the State of Washington, conducts business within the State of Washington, and is registered with the Washington Secretary of State.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant resides within this District, conducts substantial business within this District, and because a substantial portion of the events that give rise to the claims pled in this Complaint occurred in this District.

## PARTIES

10.     Plaintiff Dunston is an individual who resides in the County of Northampton, City of Northampton, Pennsylvania. Dunston is currently employed by Defendant as an at-home VQA. Dunston has executed his Consent to Sue form, which is attached hereto, as Exhibit A.

11.     Defendant SIGNAL HILL TELECOM SERVICES US, INC. is a Washington for-profit corporation whose addresses are as follows: 1425 Broadway #23804, Seattle, WA, 98122; P.O. BOX 91387 STN, BC, V7V 2P1, Canada; and 200 - 120 Lonsdale Avenue, Office B, North Vancouver, BC, V7M 2EB, Canada.

12.     Defendant is registered with the Washington Secretary of State to do business in Washington, with a Unified Business Identifier number of 603378675, and can be served at its Registered Agent for Service of Process, Carson Law Group, P.S., 3113 Rockefeller Ave, Everett, WA, 98201-0000, United States.

13.     Defendant "offers virtual inspection solutions with 20+ years experience of over 200,000 physical inspections" and has "conducted over 30,000 virtual inspections

COMPLAINT—COLLECTIVE/
CLASS ACTION - 3

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

1    since 2016."[1]

2         14.    Defendant currently advertises for at-home VQA positions throughout the

3    United States.[2]

4                           **GENERAL ALLEGATIONS**

5

6         15.    Plaintiff is a current employee of Defendant as an at-home VQA.

7         16.    The position of VQA does not require any specific certifications, licensures,

8    or education. In fact, only a high school diploma is required for the position. *See Career*

9    *Opportunity Job Posting*, attached hereto as Exhibit B.

10

11        17.    Defendant assigns Plaintiff to complete remote virtual inspections of its

12   customers throughout the United States.

13        18.    Plaintiff's primary job duties do not involve the exercise of independent

14   judgment or discretion regarding matters of significance to Defendant's business. In fact, on

15   information and belief, Plaintiff—and the Class—make all assessments using pre-approved

16   scripts and procedures, which they are required to follow.

17        19.    29 C.F.R. § 541.203(g) provides that:

18

19       Ordinary inspection work generally does not meet the duties requirements
         for the administrative exemption. Inspectors normally perform specialized
20       work along standardized lines involving well-established techniques and
         procedures which may have been catalogued and described in manuals or
21       other sources. Such inspectors rely on techniques and skills acquired by
         special training or experience. They have some leeway in the performance
22       of their work but only within closely prescribed limits.

23   *See also Blotzer v. L-3 Communications Corp.*, No. CV-11-274-TUC-JGZ, 2012 WL

24   6086931 (D. Ariz. Dec. 6, 2012).

25

26        20.    For Plaintiff to complete remote virtual inspections, Defendant prepares and

27   [1] *See* https://www.signalhill.io/about-us/ (last visited June 5, 2019).
     [2] *See* https://careers.smartrecruiters.com/SignalHill (last visited June 5, 2019).

28

---

**COMPLAINT—COLLECTIVE/**
**CLASS ACTION - 4**

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

1
2
3
4

produces to Plaintiff a "Video Checklist" to complete. The video checklist Plaintiff is

required to follow contains a step-by-step reference guide, complete with instructions as to

how to complete the "Video Checklist."

5
6
7

21.     Plaintiff is required to follow the "Video Checklist" without discretion and

cannot deviate from it. On information and belief, deviation from the Video Checklist

constitutes a terminable offense.

8
9
10
11
12
13

22.     Prior to beginning a remote virtual inspection, Plaintiff is required to

review construction site documentation regarding the equipment slated for inspection.

After Plaintiff's review of construction site documentation, the general contractor at the

construction site where the inspection is to take place "links" with Plaintiff to provide a

live video feed so the inspection can commence.

14
15
16
17

23.     During the inspection, Plaintiff follows the specific Video Checklist and

References & Comments guide to complete the inspection. At no time can Plaintiff

deviate from the supplied Video Checklist.

18
19
20

24.     If Plaintiff categorizes an item on the Video Checklist as "Fail" pursuant

to the References & Comments guide's instruction, Plaintiff simply alerts the general

contractor at the site who then independently rectifies the issue.

21
22
23
24
25
26

25.     Plaintiff has no ability, authority, or discretion to make any

recommendations as to how to fix the issues found during the inspection; rather, Plaintiff

can only provide "Comments/Notes" as to why the particular item does not conform to

the References & Comments requirements found in the Video Checklist spreadsheet. The

workers on site investigate and correct any issues noted from the inspection.

27
28

26.     Plaintiff is not allowed to make alterations to, or deviate from, the Video

**COMPLAINT—COLLECTIVE/
CLASS ACTION - 5**

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA   98104
Phone (206) 622-8000 ● Fax (206) 682-2305

Checklist.

27.     Plaintiff has no role in creating the inspection documents, Video Checklist, or References & Comments documents.

28.     Each individual inspection can last between one (1) to five (5) hours, or more.

29.     After the remote inspection is complete, however, Plaintiff is required to expend additional time rendering the video recording of the inspection to submit the final video along with the completed Video Checklist to Defendant.

30.     Each individual video rendering and submission can take an additional one (1) to five (5) hours, or more.

31.     Plaintiff cannot conduct a new inspection while a previous video is rendering. If a new remote inspection is assigned to Plaintiff while a previous video is rendering for submission, Plaintiff must cancel the render, complete the new remote inspection, and start the entire process over again.

32.     Plaintiff often completes between two (2) to five (5) remote inspections per day.

33.     Defendant requires Plaintiff to be available in the "bull pen" to accept remote inspections beginning at 7:30 a.m., up to and until 5:30 p.m.

34.     Plaintiff can be assigned a new remote inspection at any time between 7:30 a.m. and 5:30 p.m. If Plaintiff is assigned a new remote inspection at 5:29 p.m., Plaintiff is required to work until the remote inspection and video rendering is complete—sometimes until 12:00 a.m. or later.

35.     Despite Defendant's requirement that Plaintiff be available from 7:30 a.m.

COMPLAINT—COLLECTIVE/
CLASS ACTION - 6

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

to 5:30 p.m. to be assigned new inspections (i.e., 10 hours per day), and despite Plaintiff consistently working well past 5:30 p.m., Defendant only pays Plaintiff a day rate of $200 (i.e., $20 per hour) for all work completed. If Plaintiff were to complete remote inspections on time and never run afoul of Defendant's strict guidelines and procedures for conducting and completing inspections, he would be eligible to receive up to $250 (i.e., $25 per hour) for all work completed during the day. *See Auditor Raise Requirements*, attached hereto as Exhibit C.

36.     Defendant pays Plaintiff every two weeks.

37.     Plaintiff's paychecks are sent from Defendant's Seattle, Washington address.

38.     Regardless of how many hours Plaintiff actually works, Plaintiff's pay stubs only report 80 total hours worked per pay period (i.e., 40 hours per week). *See Exemplar Pay Stubs*, attached hereto as Exhibit D.

39.     Because of the length of the remote inspections, coupled with late assignments and the additional video rendering time, Plaintiff frequently works between 12 to 16 hours per day. For example, for the workweek May 13, 2019 to May 17, 2019, Plaintiff spent approximately 53 hours in the "bull pen" ready to take an inspection or conducting an inspection, *not* including time spent rendering and uploading inspection videos after leaving the "bull pen."

40.     Plaintiff has not been compensated for overtime premiums for any hours worked over 40 in a workweek. Instead, Plaintiff only receives his day rate of pay for work completed. *See Email from Kevan Stewart to Chris Dunston dated March 15, 2019*, attached hereto as Exhibit E.

COMPLAINT—COLLECTIVE/
CLASS ACTION - 7

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

1
2
3
4
5
6

41.     When Plaintiff inquired with Defendant about why he is not being paid overtime compensation, Defendant responded by saying he is "not exempt from OT compensation" and that that the higher daily rate ($250 per day) would be paid "for the 6th and/or 7th day." *See Email from Michelle Sim to Chris Dunston dated March 27, 2019*, attached hereto as Exhibit F.

7
8

42.     Regardless of which "day rate" Plaintiff is paid, he has not been compensated with overtime premiums for hours worked over 40 in a workweek.

9
10

**A.     *Defendant's Policy and Practice of Off-the-Clock Work Violates the FLSA.***

11
12
13

43.     At all times relevant to this action, Defendant suffered or permitted Plaintiff, and all other current and/or former VQAs, to routinely work more than 40 hours per workweek without paying overtime premiums.

14
15
16
17
18

44.     Defendant knew or should have known that its employees are required to be paid for all compensable time throughout the workweek. *See* 29 C.F.R. § 541.203(g). In fact, Defendant *conceded—*in writing—to Plaintiff that he was not exempt, yet intentionally failed to track Plaintiff's time on an a.m. and p.m. designation.

19
20
21
22

45.     Despite this, Defendant failed to compensate Plaintiff, and all other current and/or former hourly VQAs, for overtime premiums they are owed. Defendant's refusal to pay the overtime premium rate was, at all times, willful.

23
24
25

46.     Defendant knew, or should have known, that the FLSA, 29 U.S.C. § 207, requires it to compensate non-exempt employees who work in excess of 40 hours in a workweek at a rate of one and one-half times (1.5) their regular rate of pay.

26
27
28

47.     In reckless disregard of the FLSA, Defendant adopted and then adhered to its policy, plan or practice of employing Plaintiff, and all other current and/or former

**COMPLAINT—COLLECTIVE/
CLASS ACTION - 8**

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

1
2
3
4

VQAs, to work more than 40 hours per workweek without receiving overtime premiums.

This illegal policy, plan or practice resulted in Plaintiff, and all other current and/or former

VQAs, not being paid correctly for all overtime worked in violation of the FLSA.

### *B.    Recordkeeping.*

5
6
7
8

48.    Pursuant to 29 C.F.R § 516.1, "every employer subject to any provisions of

the Fair Labor Standards Act of 1938, as amended" is required to maintain employee

records.

9
10
11
12
13

49.    The employer is mandated to maintain and preserve payroll or other

records containing, without limitation, the total hours worked by each employee each

workday, and total hours worked by each employee each workweek. *See* 29 C.F.R §

516.2.

14
15

50.    Regardless of how many hours Plaintiff worked per pay period, Defendant

only reported 80 hours worked. *See* Exhibit D.

16
17
18

51.    Upon information and belief, Defendant has failed to establish, maintain,

and preserve accurate timesheet and payroll records as required by the FLSA.

19
20
21

52.    When the employer fails to keep accurate records of the hours worked by

its employees, the rule in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88, 66

S. Ct. 1187, 1192 (1946) is controlling. That rule states:

22
23
24
25
26
27

> Where the employer's records are inaccurate or inadequate . . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

28

**COMPLAINT—COLLECTIVE/
CLASS ACTION - 9**

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

1   53.     The Supreme Court set forth this test to avoid placing a premium on an

2   employer's failure to keep proper records in conformity with its statutory duty, thereby

3   allowing the employer to reap the benefits of the employees' labors without proper

4
5   compensation as required by the FLSA. Where damages are awarded pursuant to this test,

6   "[t]he employer cannot be heard to complain that the damages lack the exactness and

7   precision of measurement that would be possible had he kept records in accordance with .

8   . . the Act." *Id.*

9                          **COLLECTIVE ACTION ALLEGATIONS**

10
11  54.     Plaintiff brings this action pursuant to the FLSA, 29 U.S.C. § 216(b)

12  individually and on behalf of:

13          *All current and former Virtual Quality Auditors, Virtual Cellular*
            *Installation Inspectors, and/or other job titles completing the same or*
14          *similar job duties who worked for SIGNAL HILL at any time in the*
            *last three years.*
15
16  (hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this

17  definition as necessary.

18  55.     *29 U.S.C. § 216(b) Conditional Certification "Similarly Situated"*

19  *Standard*: With respect to the claims set forth in this action, a collective action under the

20  FLSA is appropriate because, under 29 U.S.C. § 216(b), Defendant's VQA employees

21
22  are "similarly situated" to Plaintiff. The class of employees on behalf of whom Plaintiff

23  brings this collective action are similarly situated because: (a) they have been or are

24  employed in the same or similar positions; (b) they were or are subject to the same or

25  similar unlawful practices, policy, or plan (namely, Defendant's practices, policy, or plan

26  of not paying their VQAs overtime premiums for hours worked in excess of 40 hours per

27
28  workweek at a rate of at least one and one-half times their regular rate of pay); (c) their

COMPLAINT—COLLECTIVE/
CLASS ACTION - 10

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

1
2
3
4

claims are based upon the same legal theories; and (d) the employment relationship between Defendant and every putative FLSA Collective member is exactly the same, and differs only by name, location, and rate of pay.

5
6
7
8
9
10
11
12

56.     Upon information and belief, Plaintiff estimates that the FLSA Collective, including both current and former VQAs over the relevant period, will include several hundred members who would benefit from the issuance of a court-supervised notice of this action and the opportunity to join it. The precise number of FLSA Collective members should be readily available from a review of Defendant's personnel, scheduling, time and payroll records, and from input received from the FLSA Collective members as part of the notice and "opt-in" process provided by 29 U.S.C. § 216(b).

13
14
15
16
17
18

57.     Plaintiff shares the same interests as the FLSA Collective in that the outcome of this action will determine whether they are entitled to unpaid overtime compensation, interest, and attorneys' fees and costs owed under the FLSA. Because the facts in this case are similar, if not altogether identical, the factual assessment and legal standards lend themselves to a collective action.

19

## COUNT I

20
21

### VIOLATION OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, *et seq*. FAILURE TO PAY OVERTIME WAGES

22

58.     Plaintiff re-alleges and incorporates all previous paragraphs herein.

23
24

59.     At all times relevant to this action, Defendant was an "employer" under the FLSA, 29 U.S.C. § 203(d), subject to the provisions of 29 U.S.C. §§ 201, *et seq*.

25
26
27

60.     Defendant is engaged in interstate commerce or in the production of goods for commerce, as defined by the FLSA.

28

61.     At all times relevant to this action, Plaintiff was "employee" of Defendant

---

**COMPLAINT—COLLECTIVE/
CLASS ACTION - 11**

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA   98104
Phone (206) 622-8000 ● Fax (206) 682-2305

1    within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

2         62.    Plaintiff either (1) engaged in commerce; or (2) engaged in the production

3    of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in

4
     the production of goods for commerce.
5

6         63.    The position of VQA is not exempt from the FLSA.

7         64.    Defendant's other job titles performing similar VQA job duties are not

8    exempt from the FLSA.

9         65.    At all times relevant to this action, Defendant "suffered or permitted"

10
     Plaintiff and the FLSA Collective members to work and thus "employed" them within the
11

12   meaning of the FLSA, 29 U.S.C. § 203(g).

13        66.    The FLSA requires an employer to pay employees the federally mandated

14   overtime premium rate of one and a half times their regular rate of pay for every hour

15   worked in excess of forty (40) hours per workweek. *See* 29 U.S.C. § 207.

16
          67.    Defendant violated the FLSA by failing to pay Plaintiff the federally
17

18   mandated overtime premium for all hours worked in excess of forty (40) hours per

19   workweek.

20        68.    Upon information and belief, Defendant has corporate policies of evading

21   overtime pay for its hourly workers.

22        69.    Defendant's violations of the FLSA are knowing and willful.

23
          70.    By failing to compensate its hourly workers at a rate not less than one and
24

25   one-half times their regular rate of pay for work performed in excess of forty (40) hours

26   in a workweek, Defendant has violated the FLSA, 29 U.S.C. § 201, *et seq*., including 29

27   U.S.C. §§ 207(a)(1) and 215(a). All similarly situated VQAs, or other job titles performing

28

**COMPLAINT—COLLECTIVE/**
**CLASS ACTION - 12**

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA   98104
Phone (206) 622-8000 ● Fax (206) 682-2305

the same or similar job duties, are victims of a uniform and company-wide policy which operates to compensate employees at a rate less than the federally mandated overtime wage rate. This uniform policy, in violation of the FLSA, has been, and continues to be, applied to all VQAs, or other job titles performing the same or similar job duties, who have worked or are working for Defendant in the same or similar position as Plaintiff.

71.    None of the provisions of the FLSA can be contravened, set aside, abrogated, or waived by Plaintiff or the FLSA Collective.

72.    The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid overtime wages plus an additional equal amount in liquidated damages, costs, and reasonable attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests the following relief:

   a.    An Order certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth above;

   b.    An Order compelling Defendant to disclose in computer format, or in print if no computer readable format is available, the names, addresses, and email addresses of all individuals who are similarly situated, and permitting Plaintiff to send notice of this action to all similarly situated individuals including the publishing of notice in a manner that is reasonably calculated to apprise the putative FLSA Collective members of their rights under this litigation;

   c.    An Order declaring that Defendant willfully violated the FLSA and its attendant regulations as set forth above;

   d.    An Order declaring that Defendant violated its obligations under the FLSA;

   e.    An Order granting judgment in favor of Plaintiff and the FLSA Collective and against Defendant and awarding the amount of unpaid overtime pay calculated at the rate of one and one-half (1.5) of the employees' regular rate multiplied by all hours that the employees worked in excess of 40 hours per week for the past three years;

COMPLAINT—COLLECTIVE/
CLASS ACTION - 13

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA   98104
Phone (206) 622-8000 ● Fax (206) 682-2305

f.      An Order awarding liquidated damages to Plaintiff and the FLSA Collective in an amount equal to the amount of unpaid overtime found owing to Plaintiff and the FLSA Collective under the FLSA;

g.      An Order awarding reasonable attorney fees and costs incurred by Plaintiff in filing this action;

h.      An Order awarding pre- and post-judgment interest to Plaintiff and the FLSA Collective on these damages; and

i.      An Order awarding such further relief as this Court deems appropriate.

## JURY DEMAND

NOW COMES Plaintiff, by and through their Attorneys, and hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

SCHROETER GOLDMARK & BENDER

*s/ Adam J. Berger*
Adam J. Berger, WSBA #20714
810 Third Avenue, Suite 500
Seattle, WA 98104
Telephone: (206) 622-8000
Fax: (206) 682-2305
berger@sgb-law.com

*Local Counsel for Plaintiff*

**JOHNSON BECKER, PLLC**
Jacob R. Rusch, MN Bar #391892
(pro hac vice application to be filed)
444 Cedar Street, Suite 1800
Saint Paul, Minnesota 55101
Telephone: (612) 436-1800
Fax: (612) 436-1801
jrusch@johnsonbecker.com

*Trial Counsel for Plaintiff*

COMPLAINT—COLLECTIVE/
CLASS ACTION - 14